UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ACE CAPITAL AND OTHERS )<br>UNDERWRITING AT LLOYD'S )<br>SEVERALLY SUBSCRIBING TO)<br>POLICY NO. A5BGLY170 )<br>)<br>    Plaintiffs, )<br>)<br>vs. )<br>)<br>VARADAM FOUNDATION )<br>and )<br>JAIME JALIFE, )<br>)<br>    Defendants. )<br>_____ ) | Case No. 1:05-cv-00413-SLR |

### BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Dated: July 30, 2007

RAWLE & HENDERSON, LLP

/s/ William J. Cattie, III -- #953
_____
William J. Cattie, III – I.D. No. 953
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899
(302) 778-1200
Counsel for Jaime Jalife and Varadam
Foundation

Of Counsel:

Michael T. Moore, Esq.
Scott A. Wagner, Esq.
Moore & Company, P.A.
355 Alhambra Circle, Suite 1100
Coral Gables, FL  33134

Case No. 1:05-cv-00413-SLR

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Authorities | 3. |
| Factual and Procedural Background | 4. |
| Summary of Argument | 5. |
| Response to Underwriters' Statement of Uncontested Material Facts | 6. |
| Statement of Insureds' Additional Uncontested Material Facts | 7. |
| Standard of Review | 13. |
| Law and Argument | 15. |
| Conclusion | 18. |

Case No. 1:05-cv-00413-SLR

# TABLE OF AUTHORITIES

*Alstrin v. St. Paul Mercury Ins. Co.*,
  179 F. Supp. 2d 376, 388 (D. Del. 2002)..................................................14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 247-48 (1986).................................................................14

*Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Company of New York*,
  519 F. Supp. 668 (D. Del 1981).............................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 323 (1986)....................................................................14

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*,
  117 F. 3d 1278, 1285 (11th Cir. 1997)....................................................13

*United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*,
  894 F.2d 1555, 1558 (11th Cir.1990).....................................................13

Case No. 1:05-cv-00413-SLR

Defendants, Jaime Jalife and Varadam Foundation, collectively "the Insureds", hereby respectfully submit their Brief in Opposition to the Underwriters' Motion and Memorandum of Law for Summary Judgment and in Support of the Insureds' Cross-Motion for Summary Judgment and state as Support for liability judgment in favor of the Insureds the following:

## Factual and Procedural Background

The insured maintained insurance for their Vessel while it cruised in the Caribbean Sea, primarily in its home country of Mexico. In 2005 the Vessel was moved to the Cancun/Puerto Aventuras area of Mexico and was afforded coverage in that area – the insured's home port. The Vessel stayed in its home area, which is South of the Tropic of Cancer, throughout the month of May. On May 31, 2005 without request, knowledge, instruction or input from the Owner, the underwriters unilaterally decided to immediately cancel coverage South of the Tropic of Cancer from June 1st through October 31st. This included the exact area where the Vessel remained and planned to remain and was a shock to the insureds. The Policy says that any cancellation will not go into effect for 10 days. The insureds, trying to safely move their Vessel to a remaining covered area and find out what happened, experienced a loss on June 5, 2005 when trying to enter the home port to refuel, load stores and move. The underwriters reserved rights and sought to deny the claim before the Court because the Vessel was South of the Tropic of Cancer, even though it was still within the ten day cancellation tail coverage of the Policy.

## Summary of Argument

Underwriters' motion simply misses the point. This is not an issue about what happens if the navigational warranty containing the "Not South of Tropic of Cancer" language is in effect. This is a question about <u>whether</u> that navigational warranty was even in effect at the time of the loss. There is no question that the law views navigational warranties – that are in effect and which the insureds had adequate notice of – strictly. But the law and the language of the Policy call for adequate/reasonable – 10 days – time before the unilaterally crafted navigational warranty devised by the underwriters comes into effect, especially where, as here, the underwriters cancelled coverage in the insureds' home port and requested coverage area.

The underwriters also conveniently choose to omit all of the critical chronological facts leading up to the loss, leaving the Court with an incomplete picture of the scenario surrounding the coverage afforded to the insureds by the Underwriters.

The facts will show that the insureds enjoyed coverage for years without any reference to the Tropic of Cancer. Then, out of the complete blue sky, the Underwriters cancelled the requested coverage and unilaterally issued a new navigational warranty, which was unilaterally forced by the underwriters upon the insureds without request for it from the insureds and required the Vessel to immediately leave her home port and the requested covered area for five months.

Quite simply, the underwriters unilaterally cancelled that coverage area for the insured without his knowledge, instruction or request – an area the underwriters knew was the insured's home port!

The cancellation of coverage by the underwriters expressly recognizes that cancellations of coverage allow the insureds ten (10) days time before they take effect, presumably to allow a reasonable time for the Owner to take the Vessel from the recently cancelled coverage area to a remaining covered area safely. Because the loss took place within the ten-day period from the date the coverage was cancelled unilaterally by the underwriters, the insureds' loss is covered by the Policy.

Under the terms of the Policy the insured had a ten day tail period that provided Mr. Jalife coverage for an additional ten days so he could have a reasonable time to leave the area where his vessel was, the very same area where the underwriters had unilaterally cancelled his coverage!

Response to the Underwriters' Statement of Material Facts

1. Admitted.

2. Denied. This is a matter of contract construction and therefore an issue of law upon which the Court should decide whether the recently issued cancellation of coverage for the area South of the Tropic of Cancer was even in effect as of the date of the loss. On May 24, 2005 the Policy A5BGLY170, the one subscribed to by the Underwriters to this action, contains no reference whatsoever to the Tropic of Cancer or any dates where the Vessel cannot be in its home port on the East Coast of Mexico. A copy of the May 24, 2005 Policy issued by the Plaintiff insurers is attached hereto as Exhibit "A" (see page 3, Clause "Navigating"). However, on May 31, 2005 the underwriters cancel the material area of coverage for the insureds by unilaterally issuing a new coverage area that excludes the vessel's home port and requested covered area for the five month period beginning the very next day on 1 June 2005! A copy of the May 31, 2005 cancellation of

coverage and new coverage area is attached hereto as Exhibit "B" (See and compare new clause on Page 1 with previously issued clause on Exhibit "A"). As such, from May 20 – 31, 2005 the Vessel was covered for the East Coast of Mexico, the Caribbean and Cancun. On May 31, 2005 the insurers cancelled that area. The insureds position is that they are afforded a reasonable time (ten days under the language of the Policy) for that cancellation to go into effect, thereby allowing the insureds reasonable time to get to the home port, load the stores and cruise into a covered area. The insureds should not be left without coverage immediately because the underwriters want to pull the rug out from under them. The insurers think they can simply cancel coverage for a covered area on a moment's notice, effective immediately, leaving a vessel immediately without coverage it had only moments before.

3. Admitted.

### Insureds' Additional Statement of Undisputed Material Facts

4. Jaime Jalife is a Mexican citizen. See Complaint, ¶ 3.

5. He formed a Delaware corporation for the single purpose of holding his recently built motor yacht, a 2001 85' Ultimate, Azimut SpA vessel, affectionately known as "Mamma Mia." *Id.*, ¶ 2.

6. On March 28, 2001 Mr. Jalife and/or Varadam Foundation submitted an insurance application to the insurance company's agent for the London based underwriters. Exhibit "C".

7. This application called for marine insurance for the Vessel in the amount of 2.8 million dollars. *Id.*

8. The application also named the Mediterranean Sea, Florida, the Caribbean Sea and the Pacific Coast as the waters to be navigated, allowing the Vessel to be transported from where it was located to where it was being kept – on the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. *Id.*

9. On or about May 8, 2001 the insurance application was submitted from the U.S based insurance agent to the London based insurance agent and accepted by the London Underwriters. There was no mention of the Tropic of Cancer. Exhibit "D".

10. A Cover Note and Policy was issued for the insured evidenced by Number K6796 01CI274. There was no mention of the Tropic of Cancer. Exhibit "E", Page 4, Clause "Navigating".

11. The insurance was to run from May 20, 2001 – May 20, 2002 (the "'01-'02 Policy"). There was no mention of the Tropic of Cancer. *Id.*

12. On April 12, 2002, in anticipation of the annual renewal of the insurance Policy on May 20, 2002 (the '02-'03 Policy"), the insureds requested an increased value from 2.8 million to 3.0 million, primarily due to the addition of extensive electronic upgrades. There was no mention of the Tropic of Cancer. Exhibit "F".

13. Navigation was noted as being the East Coast U.S., Bahamas, Caribbean, travel through the (Panama) Canal and the Pacific Coast of Mexico and the United States (and no mention of the Tropic of Cancer). *Id.*

14. On May 29, 2002 the Underwriters bound insurance for the insureds through the '02-'03 Policy. This insurance was in the amount of $3.1 million dollars and included the navigation of the Caribbean Sea (and no mention of the Tropic of Cancer). Exhibit "G".

15. On or about April 16, 2003, in anticipation of the yearly upcoming insurance (the "'03-'04 Policy"), the insureds informed the underwriters that it would only need insurance for Pacific Coast Navigation. There was no mention of the Tropic of Cancer. Exhibit "H", Page 3, Clause "Navigating".

16. On April 17, 2003 the underwriters issued a draft '03-'04 Policy that called for the navigational limits to be the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. Exhibit "I", Page 3, Clause "Navigating".

17. On the 20th of May 2003, a final draft of the '03-'04 Policy was issued by the underwriters, including the navigational limits to be the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. Exhibit "J", Page 3, Clause "Navigating".

18. On April 7-8, 2004, with the upcoming May expiration of the 2003 policy, the insureds instructed a straight renewal of the 2003 policy (the "'04-'05 Policy). There was no mention of the Tropic of Cancer. Exhibit "K".

19. On April 9, 2004 the underwriters agreed. There was no mention of the Tropic of Cancer. Exhibit "L", Page 3, Clause "Navigating".

20. On May 13, 2004 the '04-'05 Policy was issued and on May 20, 2004 the '04-'05 Policy went into effect. There was no mention of the Tropic of Cancer. Exhibit "M", Page 3, Clause "Navigating".

21. The '04-'05 Policy contained a Navigational Warranty for the Pacific coastal waters of the United States and Mexico. There was no mention of the Tropic of Cancer. *Id.*

22. On April 22, 2005 the insureds informed the underwriters that the vessel was located on the Caribbean side of Mexico, in Cancun. There was no mention of the Tropic of Cancer. Exhibit "N".

23. On May 2, 2005 the insureds requested that the '05-'06 Policy be renewed and asked for a navigation quote for the East Coast U.S. and Caribbean. There was no mention of the Tropic of Cancer. Exhibit "O".

24. On May 3, 2005 the underwriters quoted a renewal for the '05-'06 Policy with a navigational warranty for "... the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ..." No mention of the Tropic of Cancer. Exhibit "P", Page 4, Clause "Navigating".

25. On May 18, 2005 the insureds again requested the renewal of the insurance for the '05-'06 Policy to match the recently issued navigational warranty of the Policy A4BGLY181 to include the "... the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ..." per the quote of 3 May 2005. There was no mention of the Tropic of Cancer. Exhibit "Q" and "P".

26. On May 19, 2005 the underwriters confirm the agreement to bind the '05-'06 Policy as having coverage area including "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ..." There was no mention of the Tropic of Cancer. Exhibit "R", Page 3, Clause "Navigating".

27. On May 20, 2005 a request from the insureds asked for a quote including "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ...", but removing the *Pacific Coast of Mexico,* i.e. having no effect on the coverage area

on the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea. There was no mention of the Tropic of Cancer. Exhibit S"".

28. On May 20, 2005 the underwriters were to re-quote "based on east coast and Caribbean only," i.e. not the west coast/pacific waters of Mexico. There was no mention of the Tropic of Cancer. Exhibit "T".

29. On May 24, 2005 a Policy is issued for the '05-'06 coverage period numbered A5BGLY170. There was no mention of the Tropic of Cancer. Exhibit "A".

30. This Policy contains a navigational warranty covered area for "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea..." There is no mention of the Tropic of Cancer. *Id.*

31. On May 26, 2005 the underwriters are informed that the Vessel "will stay on the Caribbean/East Coast instead of returning through the canal to west coast of Mexico." There was no mention of the Tropic of Cancer. Exhibit "U".

32. On May 27, 2005 the underwriters, without any request or instruction from the insured, propose a new navigational coverage area that would unilaterally cancel the coverage south of the Tropic of Cancer between 1 June and 31 October, inclusive. Exhibit "V", Page 2.

33. This was not requested by the insured and was put into effect unilaterally by the underwriters – and was admitted sent to all insureds – indicating it was not requested by the subject insureds here. Exhibit "W".

34. This unilateral cancellation by the underwriters cancelled the coverage for the very area the insureds informed the underwriters it would remain, including the insureds' home port! Exhibit "A", Exhibits "C-W".

35. This is the first time the insureds are informed that the Vessel now, for whatever reason devised and schemed by the underwrites, needs to be out of the coverage area requested by the insureds and out of the insureds' home port in only a few days. *Id.*

36. On May 31, 2005 the underwriters issued their formally signed adhesion endorsement admitting this was a "modification" of the Policy. Exhibit "B".

37. On June 1, 2005 the actual Owner received word of the 5 month cancellation of coverage in the exact area where the Vessel wanted to be and where the Vessel's home port was, which according to the underwriters' current position was to begin that very day. Exhibit "X".

38. From 1 June 2005 through 4 June 2005 the Vessel was in Cancun, about 45 miles from the Vessel's home port of Puerto Avenutras – both of which are South of the Tropic of Cancer, when that area was hit with some bad weather, a fact confirmed after the loss by the underwriters. Exhibit "Y".

39. On 5 June 2005, when the weather cleared, the Vessel made her way back to her home port – Puerto Aventuras – to retrieve stores and fuel, and take the Vessel from her home port (located South of the Tropic of Cancer) out of the recently cancelled coverage area, and into a covered area while the Owners found out why the requested coverage area was suddenly cancelled without request by the underwriters. As such, under the language of the cancellation clause of the Policy, the cancellation of the subject area had not taken effect. See Exhibit "A", Page 14, Clause **"NOTICE OF CANCELLATION..."**

40. Upon arrival at the home port, the Captain grounded the vessel and experienced the subject loss. Exhibit "Z".

41. The underwriters then reserved their rights, and claimed that because the Vessel was South of the Tropic of Cancer that the loss was not covered. Exhibit "AA".

42. The insureds position is that this navigational warranty could not be in effect and that an underwriter cannot simply cancel a previously covered area on whim -- the area of the vessel and owner's home port and the area requested to be covered by the insureds – to immediately leave the insured without coverage for enough reasonable time to get the vessel into a covered area.

43. The underwriters pulled the rug from the insureds feet and then turned around and denied coverage. This is unconscionable.

Standard of Review

A. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) allows a party to bring a motion for summary judgment on the issue of liability alone, although there is a genuine issue as to the amount of damages. In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F. 3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir.1990). "By its very terms, this standard provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

B. Insurance Contract Construction

"The construction of an insurance policy is a matter of law for the court." *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 388 (D. Del. 2002)

## Law and Argument

The underwriter knows the insured is a Mexican citizen. The underwriters know that the Vessel's home port is Puerto Aventuras/Cancun Mexico, an area south of the Tropic of Cancer. The underwriters know that the Vessel wishes to remain in the Caribbean, an area South of the Tropic of Cancer. The Vessel has always had insurance for South of the Tropic of Cancer. The underwriters are aware of all of this as late as May 26, 2005. Armed with all of this knowledge, the underwriters, on May 27, 2005 unilaterally send notice and on May 31, 2005 cancellation of the coverage area for South of the Tropic of Cancer from 1 June through 31 October, inclusive! They do this unilaterally, on their own accord, and admittedly to all their regional policyholders as a result of the admitted fear of hurricanes, presumably brought about by the 2004 hurricane season. The Policy never before contained such type of provision. This was complete surprise brought about by the underwriters on a bunch of unsuspecting boaters. It was unilaterally sprung upon the insureds by the underwriters without any request from any insured for the language. The actual owner in this matter did not receive notice of this change until 1 June 2005, at time when the Vessel was in Cancun, about 45 miles from its home port of Puerto Aventuras, a home port that housed much of the essential equipment for the Vessel. The underwriters confirm that from 1 June through 4 June of 2005, rough weather hit the Cancun area. Upon the cessation of said weather, the Vessel owner instructed the Captain to return to Puerto Aventuras to obtain its stores, move north to Miami, and find out why its home port had been unilaterally cancelled from coverage despite no request therefrom by the Owner/insureds. When attempting to navigate the

waterways entering the Puerto Aventuras port, the Captain grounded the Vessel, causing it to sink.

The underwriters evaluated the loss and determined that the loss would have been covered; however, the underwriters thought they successfully avoided any covered loss because they unilaterally cut of coverage from that area. The underwriters then rushed to the Courthouse to file this suit.

The Policy contains language that ensures that an underwriter cannot do this. It contains language that states when an underwriter cancels coverage that an insured has ten days before that cancellation goes into effect. The Policy (Exhibit "A", Page 14, Clause "**NOTICE OF CANCELLATION AND RETURN PREMIUMS OR CANCELLATION**") language states:

> "This Policy may be cancelled by the Assurers or their representative by mailing to the Assured at the address shown in this Policy or the last know address, written notice stating when not less than ten (10) days thereafter such cancellation stated in the notice shall become the end of the Policy period."

"Insurance contracts are under the law as contracts of 'adhesion', where the insurer prepares the policy for a purchaser having no bargaining power. *Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Company of New York*, 519 F. Supp. 668 (D. Del 1981). "Where a dispute arises, such contracts are construed strictly against the insurer." *Id.* "The policy behind this rule of construction against the insurer is sound; the insurer wrote the policy and the individual purchaser is concerned primarily with monetary benefits." *Id.* "Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer." *Id.*

**Case No. 1:05-cv-00413-SLR**

On May 24, 2005 the insurers issued Policy A5BGLY170, which contained a Navigational Warranty that made no reference whatsoever to the Tropic of Cancer or needing to be north of the Tropic of Cancer. As a matter of fact from 2001 through 2005 the Policies issued for the subject Vessel never contained any reference to the Tropic of Cancer. On May 24, 2005 the Vessel was South of the Tropic of Cancer and covered by Policy issued on May 24, 2005 in accordance with the Insureds' requests. On May 27, 2005 the underwriters provisionally notified and on May 31, 2005 enacted a new cancellation of coverage, unilaterally calling for the cancellation of coverage South of Tropic of Cancer (an area the vessel was docked and always covered) beginning immediately on June 1, 2005.

As such, under the language of the Policy the cancellation would not go into effect for ten days, which would allow the insureds a reasonable time to safely move out of the coverage areas that were just cancelled unilaterally by the underwriters. On June 5, 2005, while the Vessel was attempting to get to her home port, load fuel and stores and get north of the Tropic of Cancer to find out why coverage was cancelled, she experienced her loss. Under the language of the Policy (as well as equitable notions of common sense) the Vessel remained covered, as the loss occurred within the ten day period from the date of the coverage cancellation by the underwriters.

Any other result would simply be unconscionable. If a vessel was in its home port of Buenos Aires with global coverage, could an underwriter simply cancel the navigational warranty for the Southern Hemisphere without the instruction, request, or acquiescence of the insured, immediately leaving the insured without any coverage and giving the insured no time to get north of the Equator or to dispute the warranty change?

2120443-1

14

If a loss occurred the next day, should the insurer be able to skate from coverage. Such a result would have underwriters around the world unilaterally cancelling navigational warranties for certain areas at the first sign of bad weather from the Weather Center or in areas of recent political strife. All boaters would buy coverage and then have the same coverage immediately ripped from them upon an impending hurricane three days later and left to fend for their own loss. In the event that unstable conditions break out in a part of the Globe or some sort of unforeseen event occurs, can the underwriters just issue a letter cancelling that area from coverage immediately and avoid coverage for a loss that occurs immediately thereafter. These kinds of results are not only unconscionable and inequitable, but they are ridiculous. It would turn the insurance world upside down. Coverage would mean nothing. However, it is the position that the underwriters think this Court should cling to.

This is the exact reason a clause in the Policy allows ten days before such a cancellation would go into effect. In the event an unsuspecting insured's coverage area is suddenly stripped and cancelled by the underwriters upon no request from the insured, then that insured is allowed and afforded a reasonable time to get the Vessel into a covered area.

## Conclusion

The underwriters would like this court to adopt a line of reasoning and rationale that would allow an insurer – for whatever reason and without request or knowledge of the insured – to unilaterally cancel coverage where coverage previously existed at a moment's notice, subjecting an insured and its property to immediate perils with no time to get the Vessel to a covered area. This is absurd. A precedent of such would allow

global insurers to simply cut coverage at a moment's notice to areas of coverage in bad weather conditions or areas recently subjected to political strife, despite the insureds having coverage only a day earlier. Here the insureds were previously covered South of the Tropic of Cancer for every year they had coverage. All of a sudden, without any request or instruction from the insureds, the underwriters unilaterally cancelled the coverage area South of the Tropic of Cancer for five months effective immediately. When a loss occurs almost immediately thereafter, the insurers then try to deny coverage. That simply offends all notions of justice, equity, and the law. The Policy states that when the insurer cancels coverage it will take ten days before that cancellation goes into effect. That means that the Vessel was covered for being South of the Tropic of Cancer on June 5, 2005 – the date of the loss – and was covered by the insurers. As such, coverage is afforded and the insureds are entitled to summary judgment as a matter of law. Any other construction would lead to chaos, with insurers unilaterally cancelling certain coverage areas, regardless of whether the vessel was within those coverage areas, at the first sign of bad weather or political strife.

WHEREFORE, under the language of the Policy and the undisputed material facts before the Court, the Defendants, Jaime Jalife and Varadam Foundation, ask the Court to enter judgment as a matter of undisputed material fact and applicable law in their favor and against the Plaintiff and asks the Court, if necessary, to schedule oral argument on said motions under Local Rule 7.1.4.

[SIGNATURE ON NEXT PAGE]

Case No. 1:05-cv-00413-SLR

RAWLE & HENDERSON, LLP

**/s/ William J. Cattie, III -- #953**

William J. Cattie, III – I.D. No. 953
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899
(302) 778-1200
Counsel for Jaime Jalife and Varadam
Foundation

Of Counsel:

Michael T. Moore, Esq.
Scott A. Wagner, Esq.
Moore & Company, P.A.
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134