UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ACE CAPITAL AND OTHERS UNDERWRITING AT LLOYD'S SEVERALLY SUBSCRIBING TO POLICY NO. A5BGLY170,<br><br>Plaintiffs,<br><br>vs.<br><br>VARADAM FOUNDATION and JAIME JALIFE,<br><br>Defendants. | Case No. 1:05-cv-00413-SLR |

**REPLY BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Dated: August 31, 2007

William J. Cattie, III – I.D. No. 953
RAWLE & HENDERSON, LLP
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899
Counsel for Jaime Jalife and Varadam Foundation

Of Counsel:

Michael T. Moore, Esq.
Scott A. Wagner, Esq.
Moore & Company, P.A.
355 Alhambra Circle, Suite 1100
Coral Gables, FL 33134

2141219-1

## Undisputed Material Facts Admitted

In their response the underwriters fail to refute or even respond to the insured's statement of undisputed material facts Numbers 4 – 42. Rather, they have chosen to highlight in their response three different positions, all of which fail based on the undisputed material facts; (1) that the insureds requested this type of navigational warranty *after* it was proposed by the underwriters (a fact issue); (2) that the policy was never "cancelled" (a legal issue) and (3) that the Vessel was not trying to get North of the Tropic of Cancer (an immaterial issue)

As such, the following statements of material facts are undisputed and should be deemed admitted for purposes of this motion:

Jaime Jalife is a Mexican citizen. He formed a Delaware corporation for the single purpose of holding his recently built motor yacht, a 2001 85' Ultimate, Azimut SpA vessel, affectionately known as "Mamma Mia." On March 28, 2001 Mr. Jalife and/or Varadam Foundation submitted an insurance application to the insurance company's agent for the London based underwriters. Exhibit "C". This application called for marine insurance for the Vessel in the amount of 2.8 million dollars. The application also named the Mediterranean Sea, Florida, the Caribbean Sea and the Pacific Coast as the waters to be navigated, allowing the Vessel to be transported from where it was located to where it was being kept – on the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. On or about May 8, 2001 the insurance application was submitted from the U.S based insurance agent to the London based insurance agent and accepted by the London Underwriters. There was no mention of the Tropic of Cancer. A Cover Note and Policy was issued for the insured evidenced by Number K6796 01CI274.

There was no mention of the Tropic of Cancer. Exhibit "E", Page 4, Clause "Navigating". The insurance was to run from May 20, 2001 – May 20, 2002 (the "'01-'02 Policy"). There was no mention of the Tropic of Cancer.

On April 12, 2002, in anticipation of the annual renewal of the insurance Policy on May 20, 2002 (the '02-'03 Policy"), the insureds requested an increased value from 2.8 million to 3.0 million, primarily due to the addition of extensive electronic upgrades. There was no mention of the Tropic of Cancer. Navigation was noted as being the East Coast U.S., Bahamas, Caribbean, travel through the (Panama) Canal and the Pacific Coast of Mexico and the United States (and no mention of the Tropic of Cancer). On May 29, 2002 the Underwriters bound insurance for the insureds through the '02-'03 Policy. This insurance was in the amount of $3.1 million dollars and included the navigation of the Caribbean Sea (and no mention of the Tropic of Cancer).

On or about April 16, 2003, in anticipation of the yearly upcoming insurance (the "'03-'04 Policy"), the insureds informed the underwriters that it would only need insurance for Pacific Coast Navigation. There was no mention of the Tropic of Cancer. On April 17, 2003 the underwriters issued a draft '03-'04 Policy that called for the navigational limits to be the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. On the 20th of May 2003, a final draft of the '03-'04 Policy was issued by the underwriters, including the navigational limits to be the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer.

On April 7-8, 2004, with the upcoming May expiration of the 2003 policy, the insureds instructed a straight renewal of the 2003 policy (the "'04-'05 Policy"). There was no mention of the Tropic of Cancer. On April 9, 2004 the underwriters agreed. There

was no mention of the Tropic of Cancer. On May 13, 2004 the '04-'05 Policy was issued and on May 20, 2004 the '04-'05 Policy went into effect. There was no mention of the Tropic of Cancer. The '04-'05 Policy contained a Navigational Warranty for the Pacific coastal waters of the United States and Mexico. There was no mention of the Tropic of Cancer.

On April 22, 2005 the insureds informed the underwriters that the vessel was located on the Caribbean side of Mexico, in Cancun. There was no mention of the Tropic of Cancer.

On May 2, 2005 the insureds requested that the '05-'06 Policy be renewed and asked for a navigation quote for the East Coast U.S. and Caribbean. There was no mention of the Tropic of Cancer. On May 3, 2005 the underwriters quoted a renewal for the '05-'06 Policy with a navigational warranty for "… the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea …" No mention of the Tropic of Cancer. On May 18, 2005 the insureds again requested the renewal of the insurance for the '05-'06 Policy to match the recently issued navigational warranty of the Policy A4BGLY181 to include the "… the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea …" per the quote of 3 May 2005. There was no mention of the Tropic of Cancer. On May 19, 2005 the underwriters confirm the agreement to bind the '05-'06 Policy as having coverage area including "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea …" There was no mention of the Tropic of Cancer. On May 20, 2005 a request from the insureds asked for a quote including "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea …", but removing the *Pacific Coast of*

*Mexico*, i.e. having no effect on the coverage area on the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea. There was no mention of the Tropic of Cancer. On May 20, 2005 the underwriters were to re-quote "based on east coast and Caribbean only," i.e. not the west coast/pacific waters of Mexico. There was no mention of the Tropic of Cancer.

On May 24, 2005 a Policy is issued for the '05-'06 coverage period numbered A5BGLY170. There was no mention of the Tropic of Cancer. This Policy contains a navigational warranty covered area for "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea…" There is no mention of the Tropic of Cancer.

On May 26, 2005 the underwriters are informed that the Vessel "will stay on the Caribbean/East Coast instead of returning through the canal to west coast of Mexico." There was no mention of the Tropic of Cancer. On May 27, 2005 the underwriters, without any request or instruction from the insured, propose a new navigational coverage area that would unilaterally cancel the coverage south of the Tropic of Cancer between 1 June and 31 October, inclusive. This was not requested by the insured and was put into effect unilaterally by the underwriters – and was admitted sent to all insureds – indicating it was not requested by the subject insureds here.

This unilateral cancellation by the underwriters cancelled the coverage for the very area the insureds informed the underwriters it would remain, including the insureds' home port! This is the first time the insureds are informed that the Vessel now, for whatever reason devised and schemed by the underwrites, needs to be out of the coverage area requested by the insureds and out of the insureds' home port in only a few days. On

May 31, 2005 the underwriters issued their formally signed adhesion endorsement admitting this was a "modification" of the Policy.

On June 1, 2005 the actual Owner received word of the 5 month cancellation of coverage in the exact area where the Vessel wanted to be and where the Vessel's home port was, which according to the underwriters' current position was to begin that very day. From 1 June 2005 through 4 June 2005 the Vessel was in Cancun, about 45 miles from the Vessel's home port of Puerto Avenutras – both of which are South of the Tropic of Cancer, when that area was hit with some bad weather, a fact confirmed after the loss by the underwriters. On 5 June 2005, when the weather cleared, the Vessel made her way back to her home port – Puerto Aventuras – to retrieve stores and fuel, and take the Vessel from her home port (located South of the Tropic of Cancer) out of the recently cancelled coverage area, and into a covered area while the Owners found out why the requested coverage area was suddenly cancelled without request by the underwriters. As such, under the language of the cancellation clause of the Policy, the cancellation of the subject area had not taken effect. Upon arrival at the home port, the Captain grounded the vessel and experienced the subject loss. The underwriters then reserved their rights, and claimed that because the Vessel was South of the Tropic of Cancer that the loss was not covered.

The insureds position is that this navigational warranty could not be in effect and that an underwriter cannot simply cancel a previously covered area on whim – the area of the vessel and owner's home port and the area requested to be covered by the insureds – to immediately leave the insured without coverage for enough reasonable time to get the vessel into a covered area.

2141219-1

### Response to Underwriters' Reply

Rather than refute the above facts, the underwriters admit them and instead try to introduce additional evidence they think will exonerate them from coverage. In doing so, they make several additional admissions, continuing to refute their own position.

First, they admit that "on May 20, 2005 Mr. Silberman requested a renewal premium quote 'of the assured elects to stay on the Caribbean/East Coast instead of returning though the canal to West Coast Mexico." See Page 3 of Underwriters' Reply. This shows the underwriters knew that the insureds planned to stay on the Caribbean and East Coast of Mexico, an area that spans both north and south of the Tropic of Cancer.

Second, they admit that it was the underwriters who sought to change the navigational warranty, not the insureds. This is evidenced by their "revised navigational warranty area" without any prompting from the insureds in the May 23 letter. See Underwriters Reply Exhibit "C" compared with Exhibit "D". They admit that on May 23, 2005 the underwriters, for the first time, insert, without request, language calling for a navigational area that would cancel coverage south of the Tropic of Cancer.

Even more clear from the evidence is that the insureds DID NOT accept that May 23, 2005 language for the revised navigational area, an area that would cancel coverage in the very area of the vessel's location. The undisputed evidence shows that after May 23 the underwriters themselves issued **a subsequent May 24, 2005 Policy containing NO MENTION OF THE TROPIC OF CANCER**. See Exhibit "A", Page 3 to the Insureds' Cross Motion for Summary Judgment, "Navigating" Clause.

This May 24, 2005 Policy provided coverage to both the east and west Coast of Mexico, <u>without any reference to the Tropic of Cancer whatsoever</u>. Because the May 24, 2005 Policy contained no mention of the Tropic of Cancer, it nullified any reference to the Tropic of Cancer in the previous May 23 fax.

However, because the insureds only wanted coverage for the east coast of Mexico and Caribbean Sea rather than the west and east coast coverage provided in the May 24 Policy, the insureds wrote a letter on May 26, 2005. That letter is referenced in the underwriters reply Motion on Page 4, Exhibit F.

That letter tells the underwriters that the "Vessel will stay on the Caribbean/East Coast instead of returning through canal to West Coast Mexico." This letter has nothing to do with the Tropic of Cancer; it has to do with coverage on the east coast rather than the east and west coast. There is no mention of the Tropic of Cancer in the May 26 letter. There is no request to change the May 24 Policy, which included no reference to the Tropic of Cancer. Rather, there is simply a request to ensure coverage for the East Coast of Mexico and Caribbean only, rather than both coasts of Mexico.

On May 27, 2005, the underwriters unilaterally insert the Tropic of Cancer language in addition to canceling the coverage for the West coast of Mexico. No representative of the insureds ever requested the Tropic of Cancer language. It was not in the May 24 Policy. It was not mentioned in the May 26 letter. As a matter of fact, the May 26 letter should be construed by the Court as asking for coverage both north **and south** of the Tropic of Cancer, wherein it states "Vessel will stay on the Caribbean/East Coast", a statement indicating the insureds need coverage both north and south of the

Tropic of Cancer as the Caribbean and East Coast of Mexico spans both north and south of the Tropic of Cancer.

Rather, despite no application for or discussion of, the underwriters unilaterally insert the Tropic of Cancer language without warning or request, effectively trying to leave the insureds without coverage on an immediate basis.

Not only should the new navigational warranty be completely ineffective, but the insureds under the language of the Policy, a cancellation like this must have ten days before it even would kick in. The Court should find that the new navigational warranty would never be effective and at the very least, would not have become effective before ten days under the language of the Policy. Either way the change should be deemed invalid on the whole and at the very least within the first ten days of the cancellation – both of which would afford coverage to the insureds for their loss.

WHEREFORE, because the navigational warranty was changed by the underwriters without request, warning, or agreement from the insureds, and the effect is cancellation of coverage, the insureds are afforded a 10-day grace period until the cancellation goes into effect, and the non-agreement of request makes the cancellation of coverage invalid.

Respectfully Submitted,
**RAWLE & HENDERSON, LLP**

/s/ William J. Cattie, III -- #953
William J. Cattie, III – I.D. No. 953
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899
Counsel for Jaime Jalife and Varadam Foundation

2141219-1

Of Counsel:

Michael T. Moore, Esq.
Scott A. Wagner, Esq.
Moore & Company, P.A.
355 Alhambra Circle, Suite 1100
Coral Gables, FL  33134

2141219-1