UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ACE CAPITAL AND OTHERS )<br>UNDERWRITING AT LLOYD'S )<br>SEVERALLY SUBSCRIBING TO)<br>POLICY NO. A5BGLY170    )<br>                                              )<br>     Plaintiffs,                         )<br>                                              )<br>vs.                                         )<br>                                              )<br>VARADAM FOUNDATION, INC.)<br>and                                        )<br>JAIME JALIFE,                       )<br>                                              )<br>     Defendants.                     )<br>_____) | Case No. 1:05-cv-00413-SLR |

### DEFENDANTS/INSUREDS' COMPLIANCE WITH COURT ORDER (DE 46)

Dated: February 29, 2008          Respectfully Submitted,

                                                    RAWLE & HENDERSON, LLP

                                                    /s/ **William J. Cattie, III -- #953**
                                                    _____
                                                    William J. Cattie, III – I.D. No. 953
                                                    300 Delaware Avenue, Suite 1015
                                                    P.O. Box 588
                                                    Wilmington, DE 19899
                                                    (302) 778-1200

                                                    Of Counsel:

                                                    /s/ **Scott A. Wagner, Esq.**
                                                    _____
                                                    Michael T. Moore, Esq.
                                                    Scott A. Wagner, Esq.
                                                    Moore & Company, P.A.
                                                    355 Alhambra Circle, Suite 1100
                                                    Coral Gables, FL  33134

                                                    Counsel for Jaime Jalife and Varadam Foundation

1

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Authorities | 3. |
| Introduction | 4. |
| Numbered Undisputed Material Fact Section | 6. |
| Summary of Undisputed Facts | 12. |
| Legal Issues | 14. |
| No Meeting of the Minds and, therefore, Reformation | 14. |
| Policy Interpretation | 16. |
| Public Policy | 18. |

# TABLE OF AUTHORITIES

*Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Company of New York*, 519 F. Supp. 668 (D. Del 1981)..................................................................................Pages 14-16

*Whiteside v. New Castle Mut. Ins. Co.*, 595 F. Supp. 1096, 1984 U.S. Dist. LEXIS 22568 (D. Del. 1984); ……………………………………………………..……….Pages 14-16

*Fireman's Fund Ins. Co. v. Lansdowne Steel & Iron Co.*, 1982 U.S. Dist. LEXIS 18181, 26-30 (E.D. Pa. 1982) …………………………………………...………………..Pages 14-16

*Stowe Township v. Standard Life Insurance Co. of Indiana*, 507 F.2d 1332, 1337 (3d Cir. 1975) ……………………………………………………………………...…..Pages 14-16

*General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970) ……………………………………………………………………….Pages 14-16

## Introduction

There are two material issues for decision in this case.

The first material issue for decision is factual – was there a meeting of the minds between the parties as to whether the insurance afforded to Varadam Foundation, Inc. and Jaime Jalife (collectively referred to hereinafter as the "Insured") would include a navigational warranty precluding and/or cancelling coverage South of the Tropic of Cancer from June 1st to November 1st of the Policy year. As the record now stands, there is no evidence to support a finding that the insured requested, approved, or agreed to such a navigational warranty. As such, the insured argues that this alone should invalidate the Plaintiffs' (hereinafter collectively referred to as "insurer") unilateral action to make a material change to the Insured's Policy (one which was already in effect as of May 24, 2005 (the "May 24, 2005 Policy")), which thereby cancelled coverage in the Vessel's home port without the request, approval or agreement of the insured. To the extent the Court finds this material fact undisputed – i.e., that the insured never requested, approved or agreed to cancel the coverage South of the Tropic of Cancer – then a summary judgment in favor of the insured should be entered as the May 24, 2005 policy afforded year round coverage South of the Tropic of Cancer, the policy unilaterally issued May 31, 2005 by the insurer with a new navigational warranty (the "May 31, 2005 Policy") was not requested, approved or agreed to by the insured and should therefore be deemed invalid, and because the effect of the proposed warranty would be recognized as simply a proposed contract, under which no meeting of the minds occurred, thereby failing to meet the requisite elements of any contract under law– i.e., offer, acceptance and consideration.

The second material issue for decision is legal. A reasonable interpretation of the terms of the May 24, 2005 Policy (defined below) should lead the Court to conclude that the cancellation of coverage South of the Tropic of Cancer from June 1st to October 31, 2005 would not go into effect until at least ten (10) days after the insurer's first attempt to notify the insured of the proposed change after the May 24, 2005 Policy was already in effect, i.e. on May 27, 2005 (referenced below), or June 7, 2005, i.e., a date which falls after the loss at issue which occurred June 5, 2005.

The insurer simply misunderstands. Insurer argues that a navigational warranty is strictly construed. While this may be correct, it is inapposite in our case. The issues before the Court do not include whether a navigational warranty is strictly construed; rather, they are whether the navigational warranty in contest was ever agreed to and at what point (if ever) the same went into effect. The insured challenges the insurer to present any evidence that would indicate the insured requested, approved, or agreed to the navigational warranty that cancelled coverage in the Vessel's home port.

The record, as set forth below, per the recent court order is clear – (a) the insured never agreed to a material change in the May 24, 2005 Policy cancelling coverage south of the Tropic of Cancer from June 1st though November 1st and (b) even if such material change was requested, approved, or agreed to, it would have only gone into effect after the loss at issue. Both of these findings, based upon record facts and legal interpretations of the May 24, 2005 Policy and submitted evidence, should lead the Court to enter summary judgment in favor of the insured and result in a confirmation of coverage.

### Numbered Undisputed Material Fact Section[1]

1. Jaime Jalife Sacal (a/k/a Jaime Jalife) ("Mr. Jalife") is a citizen and resident of Mexico City, Mexico. See Complaint, ¶ 3.

2. Mr. Jalife is the sole shareholder of Varadam Foundation, Inc. ("Varadam Foundation"), a Delaware corporation which was formed to act as his nominee for the purpose of holding his recently built motor yacht, a 2001 85' Ultimate, Azimut SpA vessel, affectionately known as "Mamma Mia" (the "Vessel"). *Id.*, ¶ 2. Mr. Jalife and Varadam are collectively referred to herein as the "insured."

3. On March 28, 2001 Mr. Jalife and/or Varadam Foundation submitted an insurance application to the insurer's agent for the London based underwriters' review. Exhibit "C".

4. This aforementioned application requested marine insurance coverage for the Vessel in the amount of $2.8 million. *Id.*

5. The application also named the Mediterranean Sea, Florida, the Caribbean Sea and the Pacific Coast as the waters to be navigated. There was no mention of the Tropic of Cancer.[2] *Id.*

6. On or about May 8, 2001 the insurance application was dispatched from the U.S based insurance agent to the London based insurance agent and accepted by the London Underwriters. There was no mention of the Tropic of Cancer. Exhibit "D".

---

[1] Referenced Exhibits correspond with those filed with the Court in the Original Motion for Summary Judgment.

[2] Insured will continue to point out to the Court the historical absence of any reference to the Tropic of Cancer from the inception of Insured's insurance in 2001 through 2005; although incessantly repetitive, the Insured seeks to impress upon the Court the shock and surprise of the unilateral act by the Insurer to insert this new provision cancelling coverage south of the Tropic of Cancer without the request, approval or agreement of the Insured.

7. A Cover Note and Policy was issued for the insured evidenced by Number K6796 01CI274. There was no mention of the Tropic of Cancer. Exhibit "E", Page 4, Clause "Navigating".

8. The policy term was from May 20, 2001 until May 20, 2002 (the "'01-'02 Policy"). There was no mention of the Tropic of Cancer. *Id.*

9. On April 12, 2002, in anticipation of the annual renewal on May 20, 2002, the insured requested an increase in coverage from $2.8 to $3.0 million, primarily due to the latest addition of extensive electronic upgrades. There was no mention of the Tropic of Cancer. Exhibit "F".

10. Navigation was noted as being the East Coast of the United States, The Commonwealth of the Bahamas, the Caribbean Sea, travel through the Panama Canal, and the Pacific Coast of both Mexico. Again, there was no mention of the Tropic of Cancer. *Id.*

11. On May 29, 2002 the insurer bound coverage for the insured through the issuance of the '02-'03 Policy. Coverage was in the amount of $3.1 million and included the navigation of the Caribbean Sea (and no mention of the Tropic of Cancer). Exhibit "G".

12. On or about April 16, 2003, again in anticipation of the annual renewal date, the insured informed the underwriters that coverage was only needed for Pacific Coast Navigation. There was no mention of the Tropic of Cancer. Exhibit "H", Page 3, Clause "Navigating".

13. On April 17, 2003 the underwriters issued a draft, proposed '03-'04 Policy that called for the navigational limits to be the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. Exhibit "I", Page 3, Clause "Navigating".

14. On May 20, 2003, the final '03-'04 Policy was issued by the insurer, including the navigational limits to be the Pacific Coast of Mexico. There was no mention of the Tropic of Cancer. Exhibit "J", Page 3, Clause "Navigating".

15. On or about April 7 or April 8, 2004, with the upcoming renewal date of the '03-'04 Policy, the insured requested an identical renewal of the same, ultimately resulting in the issuance of the "'04-'05 Policy. There was no mention of the Tropic of Cancer. Exhibit "K".

16. On April 9, 2004 the insurer agreed to the insured's request. There was no mention of the Tropic of Cancer. Exhibit "L", Page 3, Clause "Navigating".

17. On May 13, 2004, the '04-'05 Policy was issued, going into effect May 20, 2004. There was no mention of the Tropic of Cancer. Exhibit "M", Page 3, Clause "Navigating".

18. The '04-'05 Policy contained a navigational warranty for the Pacific coastal waters of the United States and Mexico. As was the case in all previously issued policies by the insurer to the insured, there was no mention of the Tropic of Cancer. *Id.*

19. On April 22, 2005, the insured informed the underwriters that the Vessel was located on the Caribbean side of Mexico, in Cancun. There was no mention of the Tropic of Cancer. Exhibit "N".

20. On May 2, 2005, the insured requested that the '04-'05 Policy be renewed and asked for a navigation quote for the East Coast of the United States and the Caribbean Sea, including the Gulf of Mexico. There was no mention of the Tropic of Cancer. Exhibit "O".

21. On May 3, 2005, the underwriters quoted a renewal rate for the '05-'06 Policy with a navigational warranty for "... the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ..." There was <u>no mention of the Tropic of Cancer</u>. Exhibit "P", Page 4, Clause "Navigating".

22. On May 18, 2005, the insured confirmed the request for the renewal of the '04-'05 Policy (resulting in the May 24, 2005 Policy) matching the recently requested and quoted navigational warranty of to include the "... the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ..." as per the quote of May 3, 2005. There was absolutely no mention of the Tropic of Cancer. Exhibit "Q" and "P".

23. On May 19, 2005 the underwriters confirm the agreement to bind the May 24, 2005 Policy and coverage area including "the Gulf of Mexico, the East coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ...." Still, there was no mention of the Tropic of Cancer. Exhibit "R", Page 3, Clause "Navigating".

24. On May 20, 2005, a request was made by the insured for a quote for coverage to include "the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea ...", but not the *Pacific Coast of Mexico*, i.e., expressing no intention to impact the agreed coverage area on the Gulf of Mexico, the East coast

of Mexico, Cancun, the Bahamas, and the Caribbean Sea. There was again no mention of the Tropic of Cancer. Exhibit "S".

25. On May 20, 2005, the underwriters were to re-quote "based on east coast and Caribbean only," i.e., not the West coast/pacific waters of Mexico, without any mention of the Tropic of Cancer. Exhibit "T".

26. The May 24, 2005 Policy is issued as numbered A5BGLY170. <u>There was no mention of the Tropic of Cancer</u> in the May 24, 2005 Policy. Exhibit "A".

27. This May 24, 2005 Policy contains a navigational warranty which covers the area for "the Gulf of Mexico, the East coast of Mexico, Cancun, the Bahamas, and the Caribbean Sea…thence navigating Pacific coastal waters of Mexico and the U.S.A. including the Sea of Cortez until expiry." There is no mention of the Tropic of Cancer. *Id.*

28. However, as per the insured's previous instruction, the insured did not need coverage for the West Coast of Mexico and, on May 26, 2005, the insurer is informed that the Vessel "will stay on the Caribbean/East Coast <u>instead of returning through the [Panama] canal to the west coast of Mexico</u>." Exhibit "U".

29. On May 27, 2005 the insurer, without any request or instruction from the insured, present – <u>for the first time</u> – a new proposed navigational coverage area that attempted to unilaterally cancel coverage south of the Tropic of Cancer between June 1st and October 31, 2005, inclusive. Exhibit "V", Page 2.

30. This change in the navigational warranty was not requested by the insured but rather was proposed unilaterally by the underwriters – and admittedly sent by the

insurer to all similarly situated insureds – clearly indicating that such change was not requested by the subject insured here. Exhibit "W".

31. The insured never requested, approved or agreed to this unilaterally proposed navigational warranty from the insurer.

32. This change would have effectively cancelled coverage for the period and in the very area the insured informed the insurer the Vessel would remain, which included its then home port. Exhibit "A", Exhibits "C-W".

33. This proposal from the insurer was unsolicited and would have required, under the insurer's interpretation, the insured to immediately move his vessel out of its home port in only a couple of day's time. *Id.*

34. On May 31, 2005, the insurer formally issued a signed adhesion endorsement, without the request, approval or agreement of the insured, admitting the insurer sought to institute this clause on its own and in fact proves the insurer believed it instituted a "modification" of the May 24, 2005 Policy issued only a few days earlier. Exhibit "B".

35. From June 1, 2005 through June 4, 2005, the Vessel was in Cancun, Mexico, about 45 miles away from the Vessel's home port of Puerto Aventuras, both of which are south of the Tropic of Cancer, when Cancun experienced a short period of bad weather, a fact confirmed after the loss by the insurer. Exhibit "Y".

36. On June 5, 2005, when the weather cleared, the Vessel began to make her way back to the home port. Upon arrival at bay of her home port, the Captain grounded the Vessel and the subject loss occurred, still on June 5, 2005. Exhibit "Z".

37. Upon receiving notice of the loss, the insurer immediately reserved its rights and claimed that the insured breached a navigational warranty that was never requested, approved or agreed to, when traveling South of the Tropic of Cancer on June 5, 2005. Accordingly, the insurer asserted that the subject loss was not covered. Exhibit "AA".

### Summary of Undisputed Facts

For years, the insured enjoyed coverage without any reference to the Tropic of Cancer in any of policy issued covering the Vessel. Sometimes the Vessel was kept on the East coast of Mexico, and sometimes it was kept on the West coast of Mexico, but at all times the Tropic of Cancer – a latitudinal delineation that splits the North from South at the mark 23° 26' 22" North of the Equator -- was irrelevant to the insured's coverage and never appeared anywhere in any policy. Splitting North from South made no difference to the insured; rather, any material issue regarding coverage for the subject vessel always concerned East and/or West coast coverage, and not North or South.

At no point had the insurance coverage ever referenced the Tropic of Cancer. At no point was coverage ever cancelled or limited in an area for first five months during a policy year.

Upon the renewal of the policy for the '05-'06 year, i.e., the May 24, 2005 Policy, the insured informed the insurer that coverage was needed only for the East Coast of Mexico and the United States (including the Gulf of Mexico and the Caribbean Sea), in line with the usual course of dealings between the parties; again, no mention of the Tropic of Cancer was made. Upon receipt of the May 24, 2005 Policy covering the annual '05-06 policy term, the insured noticed a navigational warranty that accidentally

included both the Western and Eastern coastal and surrounding waters of Mexico, as opposed to just the Eastern coastal and surrounding waters as requested. The May 24, 2005 Policy contained no reference whatsoever to the Tropic of Cancer and, of course, no reference to any coverage cancellation South of the Tropic of Cancer from June 1st to October 31, 2005, inclusive.

Upon recognition of the mistake of the insurer including coverage for the Western coastal and surrounding waters of Mexico in the May 24, 2005 Policy, the insurer was informed of the same and again made aware that the Vessel would remain for the time being in the coastal and surrounding waters off the East Coast of Mexico, thereby not requiring the West coast coverage. The insurer was specifically notified in writing that the Vessel "will stay on the Caribbean/East Coast <u>instead of returning through the canal to west coast of Mexico</u>."

There was no mention at that time of the Tropic of Cancer, just as there was no restriction in the May 24, 2005 Policy regarding the Tropic of Cancer, just as there never was any reference to any delineation between Northern or Southern coverage or the Tropic of Cancer in any insurance policy or contract entered into between the parties.

On Friday May 27, 2005, the insurer wrote, and on Tuesday May 31, 2005 the insurer issued the May 31, 2005 Policy containing the clause that unilaterally, without the request, approval or agreement of the insured, cancelled coverage for the period from June 1st through October 31, 2005, inclusive, for the area South of the Tropic of Cancer, an area that included the Vessel's home port of Puerto Aventuras.

## Legal Issues

### No Meeting of the Minds and, therefore, Reformation

If there is no meeting of the minds on the terms of an insurance contract, there is no contract. *Oliver B. Cannon & Son, Inc. v. Fid. & Cas.* Co., 519 F. Supp. 668, 672 (D. Del. 1981). In this matter, there is no record evidence of the insured ever requesting, approving, or agreeing to the navigational warranty that cancelled coverage south of the Tropic of Cancer from June 1 through October 31, 2005, inclusive. The only meeting of the minds related to the fact that coverage was not needed for the Western coastal or surrounding waters of Mexico. The known plans were always for the Vessel to stay on the East coast during the term of the May 24, 2005 Policy and cruise the waters of the Gulf of Mexico, the Caribbean Sea and the Atlantic Ocean. As such, because there was no meeting of the minds, i.e. no agreement on the proposed navigational warranty restricting travel South of the Tropic of Cancer, there should have been no effect when the insurer unilaterally imposed the same in the May 31, 2005 Policy.

While we have been unable to find a Delaware case on point, we have cited below several cases in which the Delaware courts, interpreting other State laws in factual circumstances akin to ours, have ruled for the insured. The law of reformation arises in instances "where the written terms of an insurance [p]olicy are changed without explanation to the insured by the insurance company and its agents." *Whiteside v. New Castle Mut. Ins. Co.*, 595 F. Supp. 1096, 1984 U.S. Dist. LEXIS 22568 (D. Del. 1984); *Fireman's Fund Ins. Co. v. Lansdowne Steel & Iron Co.*, 1982 U.S. Dist. LEXIS 18181, 26-30 (E.D. Pa. 1982); *Stowe Township v. Standard Life Insurance Co. of Indiana*, 507 F.2d 1332, 1337 (3d Cir. 1975); *General Electric Credit Corp. v. Aetna Casualty &*

*Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970).  In these cases, "when an insurance renewal contract curtails benefits from those provided by the original insurance policy, insurers have been held to the terms of the original policy." *Stowe, supra* at 1336; *Overholt Reliance Insurance Co.*, 319 Pa. 340, 179 A. 554 (1935).

The Courts have stated that these decisions are buoyed by the most "basic principles of contract law" and have stated that a "change in coverage of an insurance contract on renewal without notice to the insured is characterized as a mutual mistake of fact", invalidating the change and reforming the insurance contract back to one without the new change. *Overholt, supra* at 345, 179 A. at 557. Relying on the Restatement of Contracts §§ 504 and 505, the Courts explain that the theory underlying their findings that the offer and acceptance to renew constitute a binding agreement that the new contract will, unless otherwise agreed to, conform to the old and the failure to conform constitutes a mutual mistake of fact. *Whiteside v. New Castle Mut. Ins. Co.*, 595 F. Supp. 1096, 1984 U.S. Dist. LEXIS 22568 (D. Del. 1984); *Fireman's Fund Ins. Co. v. Lansdowne Steel & Iron Co.*, 1982 U.S. Dist. LEXIS 18181, 26-30 (E.D. Pa. 1982); *Stowe Township v. Standard Life Insurance Co. of Indiana*, 507 F.2d 1332, 1337 (3d Cir. 1975); *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970). Where the writing does not express the undoubted intentions of the parties, the instrument should be reformed to conform to the intentions of those bound by it. *Id.*

The *Overholt* Court made it clear that the fact that the insurance company issued the policy which it intended to issue (with the lesser coverage) did not make the theory of mutual mistake inapplicable. *Id.* The analysis does not change when removal or insertion

of policy language is done by the insurer negligently or intentionally. Either way, the change is considered to be invalid unless otherwise agreed to by the insured. *Id.*

Accordingly, under the undisputed record facts of this case, the insured never requested, approved or agreed to the navigational warranty cancelling coverage South of the Tropic of Cancer and such inclusion of the navigational warranty by the insurer – whether intentional or negligent – is considered, as a matter of law, a mutual mistake of fact and inapplicable to the question of coverage. This result provides coverage to the insured.

### Policy Interpretation

"Insurance contracts are under the law as contracts of 'adhesion', where the insurer prepares the policy for a purchaser having no bargaining power." *Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Company of New York*, 519 F. Supp. 668 (D. Del 1981). "Where a dispute arises, such contracts are construed strictly against the insurer." *Id.* "The policy behind this rule of construction against the insurer is sound; the insurer wrote the policy and the individual purchaser is concerned primarily with monetary benefits." *Id.* "Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer." *Id.*

The May 24, 2005 Policy made no reference whatsoever to the Tropic of Cancer in the navigational warranty clause. As a matter of undisputed material fact, from 2001 through 2005 the policies issued by the insurer covering the subject Vessel never contained any reference to the Tropic of Cancer. On May 24, 2005 the Vessel was South of the Tropic of Cancer and covered by Policy issued on that date, in accordance with the

insured's requests. Aside from the mistaken Western coastal coverage included in the May 24, 2005 Policy's navigational warranty, all other provisions were agreed.

On Friday, May 27, 2005, the insurer provisionally notified, and on the following, Tuesday, after Memorial Day Weekend, May 31, 2005, the insurer unilaterally cancelled coverage South of the Tropic of Cancer (an area where the Vessel was docked and had previously always been covered), without any request, approval or agreement by the insured, but with intended effect as of June 1, 2005.

Assuming, *arguendo*, it was acceptable for the insurer to unilaterally cancel coverage south of the Tropic of Cancer, the Policy still precluded this cancellation of coverage from going into effect until ten (10) days after notification was imposed. See Exhibit "A", Page 14-15. The applicable section entitled "Notice of Cancellation and Return Premiums or Cancellation" provides:

> This Policy may be cancelled by the Assurer or their representative by mailing to the Assured at the address shown in this Policy or last known address, written notice stating when not less than ten (10) days thereafter such cancellation shall become the end of the Policy Period.

If the insurer were allowed to cancel the coverage, then the cancellation would not go into effect until at least ten (10) days after the insurer's May 27, 2005 notice letter or June 7, 2005 – two (2) days after the June 5, 2005 subject loss.

Therefore, even assuming the insurer could at its own unilateral discretion and without request, approval or agreement of the insured, cancel coverage South of the Tropic of Cancer, the May 24, 2005 Policy provides that such a cancellation would not go into effect until at least ten days after, i.e. at least ten days after notice was given on May 27, 2005 or June 7, 2005 – two days after the subject loss of June 5, 2005.

Accordingly, under all circumstances, the May 24, 2005 Policy would remain in effect until June 7, 2005 and the subject loss would be covered.

### Public Policy

Finally, public policy dictates a finding in favor of the insured; otherwise this Court and others would be faced with insurance companies unilaterally, without request, approval, or agreement from their insureds, cancelling previously covered areas or risks upon word of impending storms, fires, or other casualties. Where an insurer learns that a hurricane is headed towards Florida, it could cancel coverage for all vessels in the area just days before impact. This is unconscionable – but it is the position taken by the underwriters and insurer in the instant case.

### PRAYER FOR RELIEF

WHEREFORE, on the record facts before the Court and the applicable law, the Insured requests the Court enter summary judgment in favor of the Insured because there was no meeting of the minds as to the Insurer's unilateral proposal for a new navigational warranty cancelling coverage south of the Tropic of Cancer from June 1 through October 31, thereby triggering reformation, and because even if the Insurer were allowed to change the navigational warranty at its unilateral prerogative, the terms of the Policy, expressly provide that such a cancellation of coverage would not have been in effect until after the subject loss.

WHEREFORE, on the record facts before the Court and the applicable law, the insured requests the Court enter summary judgment in favor of the insured as there was no meeting of the minds as to the insurer's unilateral proposal of a new navigational

warranty cancelling coverage for the area South of the Tropic of Cancer from June 1 through October 31, 2005, thereby requiring reformation to the May 24, 2005 Policy terms and coverage for such area. Alternatively, if the insurer were entitled to unilaterally change the navigational warranty at its discretion, the terms of the May 24, 2005 Policy expressly provide that such a cancellation of coverage would have not become effective until ten (10) days after notice, and specifically on a date occurring after the subject loss. Finally, the Court should also rule against the insurer for the public policy reason to prevent the possibility that coverage could be unilaterally cancelled by any insurer in advance of known or expected losses without allowing the insured reasonable time to seek alternate coverage or avoid such losses.