IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACE CAPITAL AND OTHERS UNDERWRITING AT LLOYD'S SEVERALLY SUBSCRIBING TO POLICY NO. A5BGLY170, )<br><br>Plaintiffs, )<br><br>v. )<br><br>VARADAM FOUNDATION and JAIME JALIFE, )<br><br>Defendants. ) | Civ. No. 05-413-SLR |

Michael B. McCauley of Palmer, Biezup & Henderson, LLP, Wilmington, Delaware. Counsel for Plaintiffs.  Of Counsel:  Jose R. Cot & Michael J. Maginnis of Maginnis & Hurley, APLC, New Orleans, Louisiana.

William J. Cattie, III of Rawle & Henderson, Wilmington, Delaware.  Counsel for Defendants.  Of Counsel:  Michael T. Moore & Scott A. Wagner of Moore & Company, P.A., Coral Gables, Florida.

**MEMORANDUM OPINION**

Dated: March 31, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

This action involves an insurance policy issued by plaintiffs ACE Capital and Others Underwriting at Lloyd's ("London Underwriters") covering a vessel, M/Y Mamma Mia (the "Vessel"), owned by defendants Varadam Foundation ("Varadam") and Jaime Jalife ("Jalife") (collectively, "defendants"). Specifically, the parties dispute which navigation clause was in effect under the policy and, consequently, whether protection for the Vessel's grounding at Puerto Aventuras, Mexico on June 5, 2005 existed under the applicable navigation clause. At issue is whether the policy was effectively amended to include navigation limits that only warranted protection for the Vessel north of the Tropic of Cancer. Presently before the court are the parties' motions for summary judgment. (D.I. 32, 39) For the reasons that follow, plaintiffs' motion (D.I. 32) is granted and defendants' motion (D.I. 39) is denied.

## II. BACKGROUND

For purposes of this motion practice, the material facts are undisputed.

Varadam is a Delaware corporation and the registered owner of the Vessel. (D.I. 33 at 1) Jalife, the beneficial owner of the Vessel, is a citizen of Mexico.[1] (Id.) Both defendants are named insureds under the policy. (Id.) On March 28, 2001, defendants submitted an insurance application to London Underwriters for the Vessel in the amount of 2.8 million dollars. (D.I. 39, ex. C) On May 8, 2001, the insurance application was accepted by London Underwriters with coverage to start on May 20, 2001 (the "initial

---

[1] Jalife formed Varadam for the single purpose of holding the Vessel. (D.I. 44 at 1)

policy").[2] (Id., exs. D, E)  The initial policy lasted for one year, ending on May 20, 2002, and established the navigational parameters for coverage with no mention of the Tropic of Cancer.  (Id.)  From the initial policy through May 20, 2005, the policy was renewed each year and each renewal policy's navigation clause failed to mentioned the Tropic of Cancer.  (Id., exs. F, G, H, I, J, K, L, M)

The policy in effect for the period May 20, 2004 to May 20, 2005 (the "2004-2005 policy") warranted protection as follows: "Pacific coastal waters of the U.S.A. and Mexico, including the Sea of Cortez."  (Id., ex. M)  On April 22, 2005, defendants, through their U.S. broker, Alliance Marine Risk Managers, Inc. ("Alliance"), informed London Underwriters that the Vessel was located on the Caribbean side of Mexico in Cancun.[3] (Id., ex. N; D.I. 41, ex. A)  On May 2, 2005, defendants requested a renewal quote from London Underwriters for a policy providing protection for "East coast U.S. and Caribbean, including a transit of the Panama Canal hence west coast Mexico and U.S.A." (D.I. 39, ex. O)  In response, on May 3, 2005, London Underwriters quoted a coverage price based on the following navigation limits:  "Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including Bermuda, the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas

---

[2] The initial policy issued under number K679601CI274. (D.I. 44 at 1)

[3] This constituted a breach of the 2004-2005 policy's navigation warranty. (See D.I. 41, ex. A; D.I. 39, ex. M)  This breach was reflected in an endorsement dated May 3, 2005. (D.I. 41, ex. B)  The endorsement suspended coverage from February 24, 2005 through April 22, 2005. (Id.)  When coverage again became effective, the navigating limits were:  "Inland and coastal waters of the east Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including Bermuda, the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas and the Caribbean Sea, including Venezuela but excluding Cuba, Colombia, and Haiti." (Id.)

2

and the Caribbean Sea, including Venezuela, but excluding Cuba, Colombia and Haiti." (Id., ex. P at 2)  On May 18, 2005, defendants requested renewal of the policy per the quote of May 3, 2005.  (Id., exs. P, Q)

On May 19, 2005, London Underwriters confirmed the renewal and issued a policy in accordance with their quote of May 3, 2005.[4]  (Id., ex. R)  On May 20, 2005, the defendants, through Fredric A. Silberman ("Silberman") of Alliance, requested a quote "IF [the insured] elects to stay on the Caribbean/East Coast instead of returning through canal to west coast Mexico."  (D.I. 41, ex. C)  London Underwriters agreed to re-quote based on the navigation limits as requested.  (D.I. 39, ex. T)  On May 23, 2005, London Underwriters sent a quote to Silberman based on the following navigating limits:  "Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including Bermuda, the Bahamas and the Caribbean Sea, including Venezuela but excluding Cuba, Colombia and Haiti.  Warranted not south of the Tropic of Cancer between 1st June and 31st October inclusive."[5]  (D.I. 41, ex. D)  The fax also indicated that London Underwriters would await "further advices" to

---

[4]Specifically, the navigation clause warranted protection for:  "Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including Bermuda, the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas and the Caribbean Sea, including Venezuela but excluding Cuba, Colombia and Haiti; thence trip to the west coast of Mexico via the Panama Canal; thence navigating Pacific coastal waters of Mexico and the U.S.A. including the Sea of Cortez until expiry."  (D.I. 39, ex. R)

[5]Silberman also conveyed this information to Karian Elizalde ("Elizalde") of Performance Boats, defendants' local insurance agent in Mexico on May 23, 2005.  (D.I. 41, ex. E)  The May 23, 2005 fax to Elizalde contained the contested warranty language in all bold capital letters and requested that Elizalde "advise immediately" because the premium's due date was May 30, 2005.  (Id.)

see if defendants wished to amend the policy to include the navigating limits as stated above. (Id.)

On May 24, 2005, a policy issued (the "2005-2006 policy").[6] (D.I. 39, ex. A) The 2005-2006 policy contained the following navigation clause:

> Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including Bermuda, the Gulf of Mexico, the east coast of Mexico, Cancun, the Bahamas and the Caribbean Sea, including Venezuela but excluding Cuba, Colombia and Haiti; thence trip to the west coast of Mexico via the Panama Canal; thence navigating Pacific coastal of Mexico and the U.S.A. including the Sea of Cortez until expiry.

(Id.) Two days later, on May 26, 2005, Silberman informed London Underwriters that defendants requested amendments to the May 20, 2005 renewal, which included that "Vessel will stay on the Caribbean/East Coast instead of returning through canal to west coast Mexico." (Id., ex. U; D.I. 41, ex. F)

On May 27, 2005, London Underwriters responded to Silberman via facsimile.[7] (D.I. 41, ex. F) In its response, London Underwriters noted Silberman's fax of May 26, 2005. (Id., ex. G) In particular, the fax expressed London Underwriters' understanding that defendants would find the "attached endorsement" to be in order and that it would "now process formal endorsement accordingly." (Id.) The fax, however, also closed with "[w]ill therefore await your further advices in due course." (Id.) The attached endorsement provided:

---

[6] This policy issued under number A5BGLY170. (D.I. 44 at 4)

[7] It is this fax that defendants claim "unilaterally" canceled coverage, "without any request or instruction from insured," south of the Tropic of Cancer. (D.I. 44 at 4) Further, defendants imply that they would not have agreed to a coverage area that did not include the Vessel's home port. (Id.)

4

> It is hereby noted and agreed, effective inception, navigating limits hereon are amended to read as follows:
>
> Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including Bermuda, the Bahamas and the Caribbean Sea, including Venezuela but excluding Cuba, Colombia and Haiti. Warranted not south of the Tropic of Cancer between 1st June and 31st October inclusive."

(Id., ex. H) That same day, Silberman notified Elizalde of London Underwriters' communication. (Id., ex. I) Specifically, Silberman highlighted the changes to the navigation clause in bold and under the heading of "Important!" (Id.) Defendants admit that they received the May 27, 2005 fax. (D.I. 44 at 4)

On May 31, 2005, London Underwriters issued a "modified" policy with the navigating limits as outlined in its fax of May 27, 2005.[8] (Id. at 5) On June 1, 2005, Varadam received word of the "modified" policy.[9] (Id.) From June 1, 2005 through June 4, 2005, the Vessel was in Cancun, south of the Tropic of Cancer. (Id.) On June 5, 2005, the Vessel traveled back to its home port of Puerto Aventuras, also south of the Tropic of Cancer. (Id.) Upon arriving at Puerto Aventuras, the Captain grounded the Vessel and experienced the loss at issue in the case at bar. (Id.)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions,

---

[8]On May 31, 2005, London Underwriters sent a memorandum to Alliance. (D.I. 39, ex. B) The memorandum provided: "In accordance with your instructions, we have effected the following amendment . . . . Please notify us immediately should the modified basis of cover[age] not comply with your requirements." (Id.)

[9]When defendants received the fax is unclear. Defendants allege, and plaintiffs do not dispute, that Varadam received the "modified" policy on June 1, 2005; however, neither party has asserted when Jalife received the "modified" policy. (See D.I. 44 at 5)

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Defendants present two arguments that, they contend, bind London Underwriters

to pay for the June 5, 2005 loss. (See D.I. 44) First, defendants argue that the "modified" policy issued by London Underwriters was a unilateral modification and, as such, did not bind defendants to the navigational warranty which excluded protection south of the Tropic of Cancer.[10] (Id. at 4-5) As evidence of their intent not to adopt the "modified" policy limits, defendants assert that their May 26, 2005 letter merely requested coverage on the east coast and did not mention the Tropic of Cancer. (Id.) Specifically, their interpretation is that their May 26, 2005 fax requested coverage for the east coast of Mexico only and, because this communication did not contain a request to change the 2005-2006 policy, the 2005-2006 policy's navigation limits govern. (Id.)

The court disagrees with defendants' assertion and finds that the policy was effectively amended pursuant to defendants' May 26, 2005 fax. In particular, a reasonable jury, based on the documentary evidence provided, could not find that defendants did not request that the policy be amended in accordance with London Underwriters' quote of May 23, 2005. The May 23, 2005 quote clearly sets forth the conditions of changing the policy, including the contested warranty language such that protection did not exist below the Tropic of Cancer. (See D.I. 41, ex. D) Defendants did not question the proposed navigation limits contained in the May 23, 2005 quote but, instead, simply asked that the change be effected in their May 26, 2005 fax. (See id., ex. F) Moreover, defendants' request to change the policy utilized identical words to those that prompted the May 23, 2005 quote in the first instance. (See id., exs. C, F

---

[10]The court was unable to find in the 2005-2006 policy a "modification" clause. (See D.I. 39, ex. A)

(stating that the Vessel will "stay on the Carribean/[e]ast [c]oast instead of returning through canal to east coast Mexico.")) The May 26, 2005 fax from defendants also contained the following: "Captioned insured [Varadam Foundation/Mr. Jalife] has requested the following **amendments** to the 20 May renewal." (Id., ex. F) (emphasis added); (see also id. at 4) Under these circumstances, a genuine issue of material fact does not exist and summary judgment for plaintiffs is proper.[11]

Defendants' alternative argument, that the "modified" policy is equivalent to a cancellation of coverage, is similarly without merit. (D.I. 44 at 7) Defendants assert that, because the "modified" policy cancelled coverage of an area (south of the Tropic of Cancer), the 2005-2006 policy's cancellation clause governs. Specifically, defendants argue that London Underwriters is bound to pay for the loss under the terms of the 2005-2006 policy because the cancellation clause states that coverage remains in effect for ten days after a cancellation.[12] Even when construing the clause strictly

---

[11] Moreover, the May 24, 2005 policy's navigation clause did not nullify London Underwriters' quote of May 23, 2005 and the reference to the Tropic of Cancer contained therein.

[12] The cancellation clause provides:

This Policy may be cancelled by the Assured by surrender thereof to the Assurers or their representative by mailing to the Assurers or their representative written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Assurers or their representative mailing to the Assured at the address shown in this Policy or last known address, written notice stating when not less than ten (10) days thereafter such cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the Assured or by the Assurers or their representative shall be equivalent to mailing. If the Assured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the Assurer cancels, earned premium shall be computed pro-rata. Premium

against London Underwriters, the court finds that the cancellation clause only applies when a policy is cancelled in its entirety, not to a partial cancellation of coverage area. See Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co. of New York, 519 F. Supp. 668, 671 (D. Del. 1981).  Because it is undisputed that the Vessel was south of the Tropic of Cancer when it grounded, plaintiffs are entitled to summary judgment in their favor as defendants breached the navigational warranty in effect at that time.

## V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (D.I. 39) is denied and plaintiffs' motion for summary judgment (D.I. 32) is granted.  An appropriate order shall issue.

---

adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective.  The Assurers or their representative's check mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the Assured.

(D.I. 39, ex. A)

9